Christian T. Becker
Attorney ID No. 044142005
KASOWITZ LLP
cbecker@kasowitz.com
One Gateway Center, Suite 2600
Newark, NJ 07102
(973) 645-9462
(973) 643-2030 (fax)

*Attorney for Plaintiff DGL Group Ltd*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| DGL GROUP LTD.,<br><br>Plaintiff,<br><br>v.<br><br>GOLABS, INC.,<br><br>Defendant. | **COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff DGL Group Ltd., ("DGL" or "Plaintiff"), by and through its undersigned counsel, hereby alleges the following against GoLabs, Inc., ("GoLabs" or "Defendant") (collectively, the "Parties"), upon knowledge as to itself, and otherwise upon information and belief:

## THE PARTIES

1. Plaintiff DGL Group Ltd., is a New Jersey limited company with its principal place of business at 2045 Lincoln Hwy, Floor 3, Edison, NJ 08817. It sells hoverboards, scooters, e-bikes, go-karts, and numerous other rideable products under the well-known Hover-1 brand.

2. Defendant GoLabs Inc., the American subsidiary of a Chinese conglomerate, is a Texas corporation with its registered office at 2201 Luna Road, Carrollton, Texas 75006, and maintains additional offices at 3900 W. Plano Parkway, Plano, Texas 75075.

## INTRODUCTION

3. This is a straightforward breach of contract action concerning a Settlement Agreement (the "Agreement") duly entered into between Plaintiff and Defendant. In November 2021, the Parties settled a dispute involving their respective trademarks for hoverboard products. Each party agreed to respect the other's trademarks and allow it to sell hoverboard products. Among other mutual covenants and obligations—including that Plaintiff drop its proceeding before the U.S. Patent and Trademark Office to cancel Defendant's hoverboard trademark—Defendant agreed not to restrict "use of . . . the mark HOVERBOARD in connection with [Plaintiff's] Goods or related goods" and promised "to provide written consent to the use and/or registration of any DGL trademark that includes the term HOVERBOARD." (*See* Ex. 1 – Settlement Agreement §§ 2, 6). In exchange, Plaintiff agreed "not to oppose, contest, challenge the use of, oppose the registration or re-registration of, or seek cancellation of [Defendant's hoverboard] Mark, or to assist others in doing so"—but only "[f]or so long as [Defendant] is in compliance with this Agreement." (*Id.* §7). The Agreement is unambiguous as to Plaintiff's right to use the term "HOVERBOARD" in connection with its goods.

4. Despite this clear and express commitment to live-and-let-live, Defendant brazenly breached the Agreement directly prior to the 2025 holiday shopping season, when the vast majority of hoverboard sales occur, in a transparent and craven effort to destroy Plaintiff's hoverboard business and capture market share. With blatant disregard for the Agreement, Defendant sent trademark infringement notices to various retailers hosting Plaintiff's hoverboard products,

causing Amazon, Wal-Mart, Target and other vendors to remove those products just as planning for the holiday season was beginning to ramp up.

5. The intended result of this breach was achieved: Plaintiff was not permitted or able to sell virtually any hoverboard products during the 2025 holiday season, and its hoverboard business has now entirely collapsed. As a result, Plaintiff has suffered actual and consequential damages exceeding $180 million, including lost sales, costs to restore relationships with its vendors and suppliers, and reputational harm.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a) because this suit involves the citizens of two different states and the amount in controversy exceeds $75,000.00, exclusive of interest and cost.

7. This Court has personal jurisdiction over Defendant because the Agreement contains an exclusive forum selection clause designating the courts of New Jersey and/or the United States District Court for the District of New Jersey as the exclusive forum for any dispute arising out of the Agreement brought by Plaintiff. (*See* Ex. 1 § 14). A forum selection clause controls absent a strong showing that it should be set aside. Additionally, Defendant engaged in continuous and systematic business in New Jersey and purposefully availed itself of this state, and Plaintiff's claims arise out of or relate to Defendant's contacts with this state, including but not limited to contracting with Plaintiff.

8. Venue is proper in the United States District Court for the District of New Jersey pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claims occurred in this district. Further, venue is proper pursuant to Section 14 of the Agreement (*Id.*).

## FACTS

9. Plaintiff offers a line of self-balancing scooters commonly referred to as "hoverboards." As such, it sought to register the mark "MY FIRST HOVERBOARD" with the United States Patent and Trademark Office (hereafter "DGL's Mark") on or about March 13, 2020.

10. Defendant owns U.S. Trademark Registration No. 3,685,723 for the mark "HOVERBOARD" (hereafter referred to as "GoLabs' Mark"), which was registered on September 22, 2009, for "Electrically powered two wheeled scooter for terrestrial human transportation" in Class 12.

11. After the United States Patent and Trademark Office cited GoLabs' Mark as a bar to registration of DGL's Mark, Plaintiff filed for the cancellation of GoLabs' Mark before the U.S. Trademark Trial and Appeal Board. In that proceeding, Plaintiff "request[ed] that the [Hoverboard] Mark be cancelled pursuant to 15 U.S.C. §1064(3) . . . on the following grounds: (1) the Registrant's Mark is or has become generic; (2) Registrant's Mark has not been used as a trademark and it fails to indicate a source of goods; and (3) Registrant has abandoned Registrant's Mark." The TTAB formally instituted Cancellation Proceeding No. 92077388 on June 16, 2021, and Defendant filed an Answer on July 21, 2021.

12. Following negotiations, Plaintiff and Defendant entered into a Settlement Agreement to resolve the matter.

### The Settlement Agreement

13. The Agreement, attached as Exhibit 1 to this Complaint and incorporated as if fully set out herein, was executed in November 2021. The Parties additionally executed a Consent Agreement which was attached and incorporated into the Agreement as an exhibit. (*See* Ex. 1-A – Consent Agreement).

14. As part of the Agreement, Plaintiff agreed to withdraw the Cancellation Proceeding against GoLabs' Mark. (Ex. 1 § 4). Pursuant to Sections 4 and 5 of the Agreement, the Parties stipulated to withdrawal of the cancellation proceeding with prejudice on November 17, 2021. Plaintiff fully performed under the Agreement and withdrew the Cancellation Proceeding.

15. In exchange, pursuant to the Agreement, Defendant agreed not to oppose, challenge or contest Plaintiff's use of DGL's Mark in connection with its goods. Specifically, Defendant promised the following:

- "GoLabs recognizes DGL's ownership of and right to use DGL's Mark in connection with the goods listed in U.S. Trademark Application Serial No. 88833507 (hereafter referred to as "DGL's Goods"). (*Id.* § 1);
- "GoLabs agrees not to oppose, contest, challenge the use of, oppose the registration or re-registration of, or seek cancellation of DGL's Mark, or to assist others in doing so. GoLabs further agrees not to oppose, contest, challenge the use of, oppose the registration or re-registration of, or seek cancellation of any present or future DGL trademark that includes the term HOVERBOARD, or to assist others in doing so, and GoLabs further agrees, upon request by DGL, to provide written consent to the use and/or registration of any DGL trademark that includes the term HOVERBOARD." (*Id.* § 6);

16. The Agreement also allowed Plaintiff to use DGL's Mark and GoLabs' Mark without limitation:

- "Nothing herein shall be interpreted as preventing or limiting use of DGL's Mark or the mark HOVERBOARD in connection with DGL's Goods or related goods." (*Id.* § 2).

17. Further in support of Plaintiff's bargained-for-rights, Defendant executed the Consent Agreement, permitting the registration of DGL's Mark in connection with "two-wheeled, electric, portable devices, namely self-balancing scooters[.]" (*See* Ex. 1-A § 1). Plaintiff and Defendant agreed that were any confusion to arise they would "*communicate* to each other all details of each instance" and "*cooperate* to take steps to abate the confusion, and to *prevent* confusion from recurring." (*Id.* § 7) (emphasis added).

18. The Agreement further states, "The failure of any party to enforce the terms and conditions of this Agreement, or the waiver by any party of a breach by the other party of any provision herein, shall not in any way limit or waive the right of that party thereafter to enforce the compliance by the other party with respect to any term or condition herein." (Ex. 1 § 9). The Parties also agreed that "irreparable harm will result in the event of a breach of any provision herein." (*Id.* § 8).

19. Despite Plaintiff's compliance with the Agreement, and the numerous assertions by Defendant that Plaintiff had the right to use the mark "HOVERBOARD" in connection with its products, Defendant still asserted trademark infringement allegations against Plaintiff.

**Defendant's Breach of the Agreement and the Resulting Harm to Plaintiff**

20. In or around August 2025, as Plaintiff was preparing for the busy holiday season, Defendant contacted several of Plaintiff's retail partners, including Amazon, and alleged that Plaintiff's hoverboard products infringed on Defendant's trademark rights. Given that hoverboards are most popular with school-aged children, the majority of sales occur leading up to the holiday season at the end of the year. Plaintiff must coordinate its supply to satisfy the increased demand generated by gift-shopping and special holiday sales. On information and belief,

Defendant chose this critical time in the sales cycle to bring their unfounded trademark infringement allegations and sideline a market competitor to gain market share.

21. As a direct and proximate result of Defendant's unfounded trademark infringement allegations, Plaintiff's retail partners, including Amazon, Target, and Wal-Mart, removed the falsely accused products from their online and in-store shops. The effect of Defendant's breach of the Agreement was immediate and devastating. Plaintiff found its product inventory sidelined in warehouses during its peak sales season.

22. Defendant's actions effectively stopped a competing product from being offered for sale, through the most popular online and in-person shopping markets, during the highest point of the season for hoverboard sales. This systematic takedown of a competitor's product is not incidental or unexpected; in fact, the Parties expressly and deliberately noted that "irreparable harm will result in the event of a breach of any provision" of the Agreement. (Ex. 1 § 8). Moreover, Defendant's breach damaged Plaintiff's status and reputation both with consumers and with its retail partners, causing Plaintiff to lose hoverboard sales, incur costs to restore the relationships with its vendors and suppliers, and suffer reputational and consequential harm. Plaintiff's losses were not limited to hoverboards: because the Hover-1 name appeared across Plaintiff's broader portfolio, customers, distributors, and retailers all became reluctant to purchase not only hoverboards, but also scooters, e-bikes, go-karts, and other rideable products sold under the Hover-1 brand.

23. Defendant's actions to undermine and sabotage Plaintiff's hoverboard sales are in direct breach of the Agreement between the Parties. It is in fact the exact scenario Plaintiff attempted to protect against and the reason it bargained for the Agreement. Plaintiff is now forced to seek damages through the courts by instituting this action in New Jersey as directed by the

Agreement's forum selection clause, which instructs that if Plaintiff brings a claim based on the Agreement, the action "shall be brought exclusively in any appropriate state court located in, or in the federal court for Middlesex County, New Jersey" (Ex. 1 § 14).

**FIRST CAUSE OF ACTION**

**Breach of Contract**

24. Plaintiff repeats and re-alleges each and every allegation above as if fully set forth herein.

25. The Agreement is a valid and enforceable contract between the Parties.

26. Plaintiff has fully performed its obligations under the Agreement, including by dismissing the Cancellation Proceeding before the TTAB and not contesting, opposing, challenging the use of, opposing the registration or re-registration of, or seeking cancellation of the Hoverboard Mark so long as Defendant was in compliance with the terms of the Agreement.

27. As demonstrated above, Defendant materially breached its obligations under the Agreement, by improperly and falsely alleging trademark infringement in its communications with Plaintiff's retail partners, thereby preventing or limiting Plaintiff's use of its HOVERBOARD mark in violation of the Agreement.

28. Defendant's breach of the Agreement was intended to sabotage the retail sales of Plaintiff's hoverboard products during the busy holiday shopping season.

29. As a direct and proximate result of Defendant's breach of the Agreement, Plaintiff has suffered damages, including loss of sales and revenue, reputational harm, and consequential harm, in an amount to be determined at a trial.

30. In particular, Defendant's actions have harmed Plaintiff's selling relationships with its business partners and with consumers by (a) effectively causing Plaintiff's products to be

removed by vendors, (b) putting Plaintiff at risk of its inventory being returned or disposed of, and (c) hindering the continued sale and positive review of Plaintiff's products by customers so that, even if the products were restored for sale, Plaintiff would be at a disadvantage against similar products offered by its competitors.

**WHEREFORE**, Plaintiff demands judgment in its favor and against Defendant as follows:

a. Damages in an amount to be determined at trial, but in no event less than $180 million;

b. Reasonable attorney's fees and costs of suit;

c. Pre- and post-judgment interest; and

d. Such other relief as to Plaintiff as the Court deems just and proper.

## SECOND CAUSE OF ACTION

### Breach of Implied Covenant of Good Faith and Fair Dealing

31. Plaintiff repeats and re-alleges each and every allegation above as if fully set forth herein.

32. A covenant of good faith and fair dealing is implied in every contract in New Jersey.

33. Therefore, the Agreement and any promises or assurances made between Plaintiff and Defendant (express or implied) contained the implied covenant of good faith and fair dealing.

34. At all material times relevant hereto, Plaintiff fully complied with the terms of the Agreement.

35. Defendant's actions as described above, have deprived Plaintiff of the fruits and benefits of the Parties' contractual agreement due to Defendant's breach of the covenants of good faith and fair dealing that were implied in the Agreement. Plaintiff in good faith reasonably relied on Defendant's promises to its detriment. By communicating with Plaintiff's retail partners and

thereby asserting rights inconsistent with, and contrary to, the terms of the Agreement, Defendant acted in bad faith and with the purpose of depriving Plaintiff of the benefits to which it was entitled under the Agreement.

36. As a direct and proximate result of Defendant's breach of the implied covenant of good faith and fair dealing, Plaintiff has suffered damages in an amount to be determined at trial.

**WHEREFORE**, Plaintiff demands judgment in its favor and against Defendant as follows:

a. Damages in an amount to be determined at trial, but in no event less than $180 million;

b. Reasonable attorney's fees and costs of suit;

c. Pre- and post-judgment interest; and

d. Such other relief as to Plaintiff as the Court deems just and proper.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff DGL Group Ltd., prays for the following relief:

a. Judgment in favor of Plaintiff against Defendant as to each cause of action asserted herein;

b. A monetary amount for all compensatory, and consequential damages of no less than $180 million;

c. Reasonable attorney's fees and costs of suit;

d. Pre- and post-judgment interest; and

e. Such further relief as this Court deems just, proper, and equitable.

**JURY DEMAND**

Plaintiff demands a trial by jury of all issues so triable.

Dated: October 7, 2026

**KASOWITZ LLP**

By: ____________________

Christian T. Becker
Attorney ID No. 044142005
cbecker@kasowitz.com
One Gateway Center, Suite 2600
Newark, NJ 07102
(973) 645-9462
(973) 643-2030 (fax)

David E. Ross
(*pro hac vice forthcoming*)
David J. Abrams
(*pro hac vice forthcoming*)
Dross@kasowitz.com
DAbrams@kasowitz.com
1633 Broadway
New York, New York 10019
(212) 506-1700
(212) 506-1800 (fax)

**BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP**

Matthew Fox (NY 5305883)
(*pro hac vice forthcoming*)
Eric Schlabs (NY 5580048)
(*pro hac vice forthcoming*)
mfox@beneschlaw.com
eschlabs@beneschlaw.com
1155 Avenue of the Americas, Fl. 26
New York, NY 10036
646-777-0051

*Attorneys for Plaintiff DGL Group Ltd*

**CERTIFICATION PURSUANT TO LOCAL RULE 11.2**

Pursuant to Local Rule 11.2, Plaintiff and Defendant are parties in a pending lawsuit styled: *DGL Group Ltd. v. GoLabs Inc.*, 3:25-cv-02544-L, in the United States District Court for the Northern District of Texas. I declare under penalty of perjury that the foregoing statements made by me are true.

Dated: October 7, 2026

**KASOWITZ LLP**

By: ____________________

Christian T. Becker
Attorney ID No. 044142005
cbecker@kasowitz.com
One Gateway Center, Suite 2600
Newark, NJ 07102
(973) 645-9462
(973) 643-2030 (fax)

*Attorneys for Plaintiff DGL Group Ltd.*